UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Jerri McClure, individually, and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | Case No. ) ) ) |
| vs. | ) ) |
| eviCore healthcare MSI, LLC, | ) ) ) |
| Defendant. | ) ) ) |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Jerri McClure, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective/Class Action Complaint against Defendant, eviCore healthcare MSI, LLC, and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Jerri McClure (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, eviCore healthcare MSI, LLC (hereinafter referred to as "eviCore" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500, *et seq*. ("MMWL").

2. Defendant is a healthcare management services provider headquartered in South Carolina with locations in Massachusetts, Colorado, Tennessee, Florida, Connecticut, Missouri, and New York.[1]

3. Plaintiff and similarly situated employees work as Customer Service

---
[1] See Defendant's website: https://www.evicore.com/ (Last Accessed October 21, 2019).

Representatives ("Representatives") at Defendant's call centers.

4. Representatives' job duties include serving as the main point of contact for inbound callers and managing their needs from start to finish, responding to processing requests for service, speaking with physicians' offices and sites where the procedures will take place, capturing and entering the necessary demographic and medical information, building the case file, providing status updates, and serving as a liaison to the clinical staff when needed.

5. In order to perform their jobs, Defendant's Representatives are required to boot up their computers and start-up and log-in to various computer programs, software programs, and applications before the start of their scheduled shifts. This process takes approximately ten minutes per shift and is necessary for Representatives to be ready to take calls at the start of their shifts.

6. Defendant has at all relevant times maintained, and continues to maintain, a common policy of failing to pay Representatives for the time they spend before the start of their scheduled shifts performing the foregoing pre-shift activities, all of which direct benefit Defendant and are essential to their responsibilities as Representatives.

7. Specifically, Defendant prohibits its Representatives from clocking in prior to the start of their scheduled shifts. Because it takes Representatives approximately ten minutes to boot up their computers and start-up and log-in to various computer programs, software programs, and applications, and read work-related e-mails, Defendant's rule compels them to perform these activities *before* clocking into Defendant's timekeeping system.

8. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those

2

abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

9. Defendant knew or could have easily determined how long it took for its Representatives to complete the pre-shift start-up/log-in process and Defendant could have properly compensated Plaintiff and the Class for the pre-shift start-up/log-in work they performed, but did not.

10. Because Representatives typically work at least 40 hours per week, Defendant's failure to pay them for pre-shift time violates the FLSA's and MMWL's overtime requirements, which mandates that employees be paid for each hour worked in excess of 40 in a workweek at a rate not less than 1.5 their regular rate of pay.

11. Defendant further violated the FLSA and MMWL by:

    a. requiring Representatives to clock out at the end of their scheduled shifts, causing them to perform post-shift work off the clock including closing/shutting down computer programs and systems; and

    b. failing to pay Representatives for time spent logging in and out of their computers during their unpaid lunch break.

12. The named Plaintiff is a former Representative who worked for Defendant on an hourly basis in Defendant's St. Louis, Missouri call center.

13. Plaintiff brings this action on behalf of herself and all other similarly situated hourly Representatives employed by Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

15. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

17. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as their federal claims.

18. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

19. This Court has personal jurisdiction over Defendant because Defendant does business within the state of Missouri and maintains systematic and continuous contacts with the

State of Missouri, from which Plaintiff's claims arise.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

21. Plaintiff is a resident of Moline Acres, Missouri, and has been employed by Defendant as an hourly Representative in Defendant's St. Louis, Missouri location from about November 1, 2018 through September 13, 2019. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as Exhibit 1.

22. Defendant is a limited liability company incorporated in Tennessee and headquartered in South Carolina.

23. Defendant has a registered agent of CSC-LAWYERS INCORPORATING SERVICE COMPANY at 221 Bolivar Street Jefferson City, MO 65101.

## GENERAL ALLEGATIONS

24. Plaintiff worked as a Representative for Defendant at its call center in St. Louis, Missouri from about November 1, 2018 through September 13, 2019. During her employment, Plaintiff earned $14.00 per hour.

25. Throughout her employment with Defendant, Plaintiff and other Representatives regularly worked off-the-clock.

26. In order to perform their jobs, Plaintiff and other Representatives were required to boot up their computers and start-up and log-in to various computer programs, software programs, and applications before the start of their scheduled shifts. This process took approximately ten minutes per shift.

27. The time spent booting up their computers, starting up and logging in to various

5

computer programs, software programs, and applications benefited Defendant and was essential to their responsibilities as Representatives.

28. Defendant prohibited Representatives from clocking in prior to the start of their scheduled shifts but required Plaintiff and other Representatives to be call-ready immediately at the start of their scheduled shifts. Because it took approximately ten minutes to boot up their computers and start-up and log-in to various computer programs, software programs, and applications in order to be call-ready, Defendant's rule compelled them to perform these activities *before* clocking into Defendant's timekeeping system.

29. During the course of the workday, Plaintiff and other Representatives took an unpaid lunch break, during which they were required to log out of their computers and log back in, but were not paid for such time.

30. Defendant required Plaintiff and other Representatives to clock out at the end of their scheduled shifts, causing them to perform post-shift work off the clock including closing/shutting down computer programs and systems.

31. Because Plaintiff and other Representatives typically worked at least 40 hours in a workweek, she was not paid for time spent working excess of 40 hours in a workweek, in violation of the FLSA, the MMWL, and Defendant's contractual obligation to pay Representatives for all hours worked.

32. As a non-exempt employee, Plaintiff and other Representatives were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

33. At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work performed by Plaintiff and other Representatives before the start of their scheduled shifts.

34. At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedule, duties, protocols, applications, assignments, and employment conditions.

35. Defendant knew or should have known that the time Representatives spent in connection with the pre-shift start-up/log-in process, the mid-shift time spent on logging in and out of the computer during the unpaid lunch break, and the post-shift time spent closing/shutting down computer programs and systems is compensable under the FLSA, MMWL, and the common law.

36. At all relevant times, Defendant was able to track the amount of time that Plaintiff and other Representatives spent in connection with the pre-shift start-up/log-in process, the mid-shift time spent on logging in and out of the computer during the unpaid lunch break, and the post-shift time spent closing/shutting down computer programs and systems; however, Defendant failed to document, track, or pay them for such work.

37. At all relevant times, Defendant's policies and practices deprived Plaintiff and the putative Collective of wages owed for the pre-shift, mid-shift, and post-shift activities Plaintiff and the putative Collective performed. Because Plaintiff and the putative Collective typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff and the putative Collective of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

## **COLLECTIVE ACTION ALLEGATIONS**

38. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly customer service representatives who worked for Defendant in any of its call centers in the United States at any time within the*

7

*three years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Collective").   Plaintiff reserves the right to amend this definition as necessary.

39. Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

40. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The Collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

41. The employment relationships between Defendant and every Collective member are the same and differ only in name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift, mid-shift, and post-shift time owed to each employee – do not vary substantially from Collective member to Collective member.

42. The key legal issues are also the same for every Collective member, to wit: uncompensated pre-shift, mid-shift, and post-shift time is compensable under the FLSA.

43. Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include hundreds of members. The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 MISSOURI CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her

own behalf and on behalf of:

> *All current and former hourly customer service representatives who worked for Defendant in any of its call centers in Missouri at any time within the two years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Rule 23 Missouri Class"). Plaintiff reserves the right to amend this definition as necessary.

45. The members of the Rule 23 Missouri Class are so numerous that joinder of all Rule 23 Missouri Class members in this case would be impractical. Plaintiff reasonably estimates that there are hundreds of Rule 23 Missouri Class members. Rule 23 Missouri Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

46. There is a well-defined community of interest among Rule 23 Missouri Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Missouri Class. These common legal and factual questions include, but are not limited to, the following:

   a. Whether the uncompensated pre-shift, mid-shift, and post-shift time is compensable under the FLSA;

   b. Whether Rule 23 Missouri Class members are owed wages for time spent performing pre-shift, mid-shift, and post-shift, and if so, the appropriate amount thereof; and

47. Plaintiff's claims are typical of those of the Rule 23 Missouri Class in that she and all other Rule 23 Missouri Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Missouri Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Missouri Class members.

48. Plaintiff will fully and adequately protect the interests of the Rule 23 Missouri Class and she has retained counsel who are qualified and experienced in the prosecution of Missouri wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Missouri Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Missouri Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

50. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

51. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

52. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Missouri Class and declaratory relief is appropriate in this case with respect to the Rule 23 Missouri Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(Brought Individually and on a Collective Basis Pursuant to 29 U.S.C. § 216(b))**
**<u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u>**
**<u>29 U.S.C. § 201, *et seq.*</u>**

53. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

54. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

55. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

56. At all times relevant to this action, Plaintiff and other Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

57. Plaintiff and other Collective members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

58. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

59. At all times relevant to this action, Defendant required Plaintiff and other Collective members to perform pre-shift, mid-shift, and post-shift work as described herein, but failed to pay these employees the federally mandated minimum wage or overtime compensation for such time.

60. The uncompensated pre-shift, mid-shift, and post-shift work performed by Plaintiff and other Collective members was an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

61. In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre-shift, mid-shift, and post-shift time should have been paid them at the federally mandated rate of 1.5 times each employee's regularly hourly wage.   29 U.S.C. § 207.

62. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Representatives to complete the pre-shift, mid-shift, and post-shift activities and Defendant could have properly compensated Plaintiff and the Collective for such time, but did not.

63. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Brought Individually and on a Class Basis Pursuant to Rule 23)
### VIOLATIONS OF THE MISSOURI MINIMUM WAGE LAW, MO. REV. STAT. § 290.500

64. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

65. At all times relevant to the action, Defendant was an employer covered by the mandates of the MMWL, and Plaintiff and the Rule 23 Missouri Class are employees entitled to the MMWL's protections.

66. The MMWL requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. Mo. Rev. Stat. § 290.505.

67. Mo. Rev. Stat. § 290.527 provides that as a remedy for a violation of the MMWL, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

68. Defendant violated the MMWL by regularly and repeatedly failing to compensate

Plaintiff and the Rule 23 Missouri Class for the time spent on the pre-shift, mid-shift, and post-shift work activities described in this Complaint, including hours worked in excess of 40 in a workweek.

69. As a result, Plaintiff and the Rule 23 Missouri Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Missouri Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the MMWL at an amount to be proven at trial.

## COUNT III
### (Brought Individually and on a Class Basis Pursuant to Rule 23)
### BREACH OF CONTRACT

70. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

71. At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Missouri Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

72. Each Rule 23 Missouri Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

73. Plaintiff and other Rule 23 Missouri Class members performed under the contract by doing their jobs and carrying out the pre-shift, mid-shift, and post-shift activities that Defendant required or accepted.

74. By not paying Plaintiff and other Rule 23 Missouri Class members the agreed upon hourly wage for the pre-shift, mid-shift, and post-shift activities, Defendant systematically breached its contracts with Plaintiff and other Rule 23 Missouri Class members.

75. Plaintiff's and the Rule 23 Missouri Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated

minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

76. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Missouri Class members spent performing pre-shift, mid-shift, and post-shift activities, which are a fundamental part of an "employer's job."

77. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and other Rule 23 Missouri Class members have been damaged, in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, JERRI MCCLURE, requests the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Missouri Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts II and III);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA collective action Class and the Rule 23 Missouri Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Declaring Defendant violated the MMWL and that said violations were intentional, willfully oppressive, fraudulent and malicious;

h. Declaring Defendant breached its contracts with Plaintiff and the members

        of the Rule 23 Missouri Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class and the Rule 23 Missouri Class, the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. Approving an incentive award to Plaintiff for serving as the representative of the FLSA collective action Class and the Rule 23 Missouri Class

l. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, JERRI MCCLURE, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

RESPECTFULLY SUBMITTED,

Dated: December 2, 2019     By:    /s Anthony M. Pezzani
                                   Anthony M. Pezzani, #52900MO
                                   Engelmeyer & Pezzani, LLC
                                   13321 N. Outer Forty Road, Suite 300
                                   Chesterfield, MO 63017
                                   (636) 532-9933 Phone
                                   (314) 863-7793 Facsimile
                                   tony@epfirm.com

                                   *Local Counsel for Plaintiff*

15

Jason T. Brown*
Nicholas Conlon*
Lotus Cannon*
BROWN, LLC
111 Town Square Pl Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com
*to be admitted Pro Hac Vice

*Lead Counsel for Plaintiff*