IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Jerri McClure, individually, and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:19-cv-03272-RLW |
| eviCore healthcare MSI, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

**I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND** ...................................3

**II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS** ...............................4

   **A.   The Scope of the Collective and Relevant Time Periods** ...............................5

   **B.   The Monetary Recovery** ...........................................................................5

   **C.   The Release** .............................................................................................6

   **D.   The Settlement Mechanism for Monetary Recovery** ...................................7

**III.   LEGAL ARGUMENT** ...................................................................................7

   **A.   The FLSA Collective Should Be Certified for Settlement Purposes.** ...........7

   **B.   The Settlement is Fair and Reasonable.** ....................................................9

     **1.   The Settlement Is Fair.** ...........................................................................11

     **2.   The Settlement Is Reasonable.** ..............................................................13

   **C.   The Proposed Fees are Fair and Reasonable.** ..........................................14

     **(1)   The Novelty and Difficult of the Questions Involved, the Requisite    Skill and Experience, Reputation and Ability of the Attorneys** ...................................17

     **(2)   Preclusion of Other Employment and Contingent Fee** ...............................18

     **(3)   The Customary Fee and Awards in Similar Cases** ...................................18

     **(4)   Time Limitations and Nature and Length of the Professional    Relationship** .20

     **(5)   Results Obtained** .................................................................................20

     **(6)   Time and Labor Required** ......................................................................21

     **(7) Reaction of the Class** .............................................................................22

   **D.   The Notice Adequately Informs FLSA Collective Members Of The Settlement.** ......22

**IV.    CONCLUSION** ...........................................................................................23

Plaintiff JERRI MCCLURE ("Plaintiff") and Defendant EVICORE HEALTHCARE MSI, LLC ("Defendant"), by and through their attorneys of record, jointly submit this Motion for Approval of Collective Action Settlement. Plaintiff and Defendant, collectively referred to as the "Parties," have reached an agreement to settle this action for a total of $3.5 million. Pursuant to 29 U.S.C. § 216, *et seq.*, the Parties seek this Court's approval of their "Settlement Agreement and Release" ("Settlement"), a copy of which is submitted for the Court's review as Exhibit 1.

For the reasons set forth herein, the Court should certify this case as a collective action for settlement purposes, find that the parties' FLSA collective action settlement — negotiated at arm's length by experienced counsel with the assistance of a highly regarded wage-and-hour mediator — fairly and reasonably resolves a bona fide dispute, approve the proposed Service Award for the Named Plaintiff Jerri McClure, find that the parties' proposed Notice, Claim Form, and plan for distribution and settlement administration include content and utilize a process that is fair, adequate and reasonable for settlement of an FLSA collective action, approve the parties' negotiated agreement that plaintiffs' counsel receive as a reasonable attorney's fee one-third (33.3%) of the common fund recovered for the benefit of the FLSA settlement collective, plus reimbursement of their stipulated litigation costs, and dismiss this action with prejudice while retaining exclusive jurisdiction as necessary to implement the terms of the Settlement.

## I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff is a former hourly non-exempt customer service representative who worked for Defendant's call center in Missouri. Plaintiff alleges that she and other similarly-situated customer service representatives, who were assigned to work for one of Defendant's call centers in Colorado, Connecticut, Florida, Missouri, New York, South Carolina, and Tennessee, were not compensated for the time spent booting up and logging into and out of Defendant's computer

systems before and after their shifts and during their meal breaks. *See* Doc. No. 1, Complaint, ¶¶ 5-7, 11, 26, 29-30. Plaintiff asserts three causes of action against Defendant: (1) Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq*. (Complaint, ¶¶ 53—63), (2) Failure to Pay Minimum and Overtime Wages in Violation of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 (Complaint, ¶¶ 64-9), and (3) Failure to Pay Wages in Breach of Contract in Violation of Missouri Law (Complaint, ¶¶ 70-7). As a result of these allegations, Plaintiff seeks to recover unpaid overtime wages, liquidated damages, attorneys' fees, costs, and interest for herself and all customer service representatives under the FLSA and straight time wages and applicable penalties for all customer service representatives who were assigned to work at Defendant's call center in Missouri under the MMWL and for breach of contract.

Following the filing of Plaintiff's Complaint, the Court entered an Order staying the litigation to afford the Parties the opportunity to engage in informal discovery and to participate in an early mediation. *See* Doc. No. 20. In addition, the Parties entered into an agreement tolling the FLSA's statute of limitations pending the mediation. The Parties thereafter engaged in settlement discussions before, during and after the mediation conducted by mediator Frank Neuner, Esq. (Brown Aff. ¶¶ 8). The mediation itself was unsuccessful. However, following the mediation, the Parties (both represented by counsel who have litigated numerous wage and hour collective and class actions) agreed to settle Plaintiff's claims for an early and certain resolution that represents a significant monetary value for the FLSA Collective.


## II.     SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

## A.    The Scope of the Collective and Relevant Time Periods

As part of the Settlement, the Parties agreed that Plaintiff would request leave of Court to file an Amended Complaint (1) to revise the scope of the FLSA Collective to include:

> The approximately 6,010  non-exempt clinical and non-clinical customer service representatives, physician support representatives, and consumer engagement representatives, excluding employees to the extent they worked in Department 1480, who were  (1) primarily responsible for taking or making inbound or outbound calls, (2) assigned to one of Defendant's call centers in Colorado, Connecticut, Florida, Missouri, New York, South Carolina, and Tennessee, and (3) worked overtime during the period of December 13, 2016 -September 30, 2020.

(Settlement Agreement, ¶ 2; "FLSA Collective Members")

Plaintiff's proposed Amended Complaint is attached as Exhibit 2 and, in this motion, the Parties ask the Court to grant Plaintiff leave to file the same. The members of the FLSA Collective are collectively referred to as the FLSA Collective Members.

## B.    The Monetary Recovery

The Settlement provides for a maximum settlement amount of $3,500,000 (the "Settlement Fund").  *Id.* at ¶ 4(a).  The following approximate amounts will be set up from the Settlement Fund:

- •     $2,269,040.57 for Plaintiffs' FLSA claims (the "FLSA Opt-In Fund");

- •     $3,292.77 for Plaintiffs' Missouri state law claims (the "Missouri Fund");

- •     $6,500 for a service award to Plaintiff Jerri McClure for her participation in the lawsuit (the "Service Award Fund");

- •     $1,000 in exchange for General Releases to Plaintiff Jerri McClure and opt-in plaintiffs Anara Midgett, Kerri Guzman, David Power, Kathy Lewis, Shaquetta Battiste, and Judith Jankiewicz;

- •     $37,500 for JND Claims Administration services in overseeing the settlement (the

"Claims Administrator Fund"); and

- $1,176,666.67 for Plaintiffs' Counsel's attorneys' fees and costs (the "Fees and Costs Fund").

*Id.* at ¶ 4.

Each employee's settlement share of the FLSA Opt-in and/or Missouri funds was calculated based on the number of workweeks each worked during the applicable statutes of limitation. *Id.* at ¶¶ 4(a)(1). Fifty percent of each FLSA Collective Member's settlement share will be deemed "wages" from which payroll taxes will be deducted; the balance of each FLSA Collective Member's settlement share will be deemed interest and penalties (including liquidated damages) from which no payroll taxes will be deducted. *Id.* With respect to the FLSA Opt-In Fund, and consistent with the FLSA's mandatory "opt in" provision (29 U.S.C. § 216(b), a FLSA Collective Member who does not file a timely and valid Claim Form (Exhibit A to the Settlement) will forfeit his or her eligibility to receive a settlement share. The settlement shares of FLSA Collective Members who do not file a Claim Form will remain in Defendant's possession.

This relief constitutes a significant recovery for FLSA Collective Members. The amount of the relief was calculated based on approximately three minutes of additional time for each FLSA Collective Member's work shift, plus liquidated damages, for the full three-year FLSA statute of limitations.

## C.    **The Release**

Defendant has denied and continues to deny it has any liability in the lawsuit. Defendant maintains that the alleged off-the-clock work—booting up and logging into and out of Defendant's computer systems—is not compensable under the FLSA or Missouri law and is, in any event, *de minimis*. Nevertheless, the Settlement provides the definition of Released Claims

for the FLSA Collective in paragraph 6. Each member of the FLSA Collective who submits a timely and valid Claim Form fully and finally releases and discharges the "Releasees" as defined in paragraph 6 of the Settlement for all claims under the FLSA for the Relevant Time Period as defined in paragraph 2 of the Settlement. Similarly, each FLSA Collective Member that lived or worked for Defendant in Missouri who submits a timely and valid Claim Form fully and finally releases and discharges the "Releasees" as defined in paragraph 6 of the Settlement for all claims under Missouri state law for the Relevant Time Period as defined in paragraph 2 of the Settlement.

### D. The Settlement Mechanism for Monetary Recovery

The Parties have agreed to use JND Claims Administration, a third-party Claims Administrator, to administer the claims process. *Id.* at ¶ 4(a)(4). Under the Settlement, the Claims Administrator will send Notice by first-class mail to the FLSA Collective (substantially in the form of Exhibit C to the Settlement). The Claims Administrator will also issue and send checks, in accordance with the Settlement, to the FLSA Collective Members and will send and issue, again in accordance with the Settlement, IRS W-2s and 1099s to them. *Id.* at ¶¶ 4(a)(1).

FLSA Collective Members who are sent a notice will have 45 days from the date of the notice to submit a valid Claim Form in order to be paid as part of the FLSA Settlement.

## III. LEGAL ARGUMENT

### A. The FLSA Collective Should Be Certified for Settlement Purposes.

To facilitate the Settlement, the Parties ask the Court to certify, pursuant to 29 U.S.C. § 216(b) and for settlement purposes only, the FLSA Collective defined as "the approximately 6,010 non-exempt clinical and non-clinical customer service representatives, physician support representatives, and consumer engagement representatives, excluding employees to the extent they worked in Department 1480, who were (1) primarily responsible for taking or making

inbound or outbound calls, (2) assigned to one of Defendant's call centers in Colorado, Connecticut, Florida, Missouri, New York, South Carolina, and Tennessee, and (3) worked overtime during the Relevant Time Period." Settlement Agreement, ¶ 2.

The FLSA authorizes employees to bring a collective action against their employer on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action. 29 U.S.C. § 216(b); *Schmaltz v. O'Reilly Auto. Stores, Inc.*, 2013 U.S. Dist. LEXIS 33999, at *2 (E.D. Mo. March 11, 2013).

District courts within the Eighth Circuit conduct a two-step analysis to determine whether employees are "similarly situated" for purposes of a collective action. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010). Certification at the first step "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Littlefield*, 679 F. Supp. 2d at 1016 (quoting *Schleipfer v. Mitek Corp.*, 2007 U.S. Dist. LEXIS 64042, at *3 (E.D. Mo. Aug. 29, 2007)). At the second step, courts make a final determination as to whether the class members are "similarly situated," but considering several factors: including "(1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." *Brennan v. Qwest Commc'ns Int'l, Inc.*, 2009 U.S. Dist. LEXIS 47898, at *3 (D. Minn. June 4, 2009).

Where, as here, Plaintiffs seek approval of a collective action settlement reached before the first step of the certification process, it is appropriate to apply both steps at once. *See Nicholson v. Ioc-Boonville, Inc.,* 2020 U.S. Dist. LEXIS 42134, *5 (W.D. Mo. March 11, 2020); *Brown v.*

*Reddy Ice Corp.*, 2016 U.S. Dist. LEXIS 65907, at *2-6 (E.D. Mo. May 19, 2016) (White, J.); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 U.S. Dist. LEXIS 7123, at *4-5 (W.D. Mo. Jan. 17, 2013); *Briggs v. PNC Fin. Servs. Grp.*, 2016 U.S. Dist. LEXIS 165560, at *3 (N.D. Ill. Nov. 29, 2016) (concluding that a "one-step settlement approval process is appropriate" in FLSA collective action settlements because "FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions," given that "the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future").

For purposes of settlement, the FLSA Collective meets the criteria for certification. Plaintiff asserts that the collective raises similar legal issues arising from a common policy or practice—Defendant's alleged failure to pay the employees included in the collective for the time spent booting up and logging into and out of Defendant's computer systems—and that all such employees are alike subject to a "single, FLSA-violating policy." The FLSA Collective Members are also hourly-paid employees who held similar job titles with similar job duties. *See Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (finding allegations that the FLSA Collective Members performed essentially the same job and were paid using the same rate system were sufficient to conditionally certify the class).

Moreover, fairness and procedural considerations—given the settlement posture of the litigation—strongly support certification as it would afford over 6,000 employees an effective opportunity to join in the litigation and participate in a common settlement. *Brown*, 2016 U.S. Dist. LEXIS 65907, at *5 ("Additionally, taking into account other fairness and procedural considerations, certification would allow hundreds of employees to effectively pool their resources for litigation.").

**B. The Settlement is Fair and Reasonable.**

In order to approve a settlement agreement in a case brought under § 216(b), a court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. *Fry v. Accent Mktg. Servs., L.L.C.*, 2014 U.S. Dist. LEXIS 9464, at *1 (E.D. Mo. Jan. 27, 2014); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946)); *see also Copeland v. ABB, Inc.,* 521 F.3d 1010, 1014 (8th Cir. 2008). When evaluating the fairness of a settlement, a court "need only ensure 'that the settlement . . . represents a fair compromise of a bona fide wage and hour dispute' and 'is fair and reasonable for all who are affected by it.'" *Gray v. CJS Sols. Grp., LLC,* 2020 U.S. Dist. LEXIS 138604, *6-7 (D. Minn. Aug. 4, 2020) (citations omitted).

In assessing fairness and reasonableness of a FLSA collective action settlement, courts consider the same fairness factors typically applied to a Rule 23 class action. *Fry*, 2014 U.S. Dist. LEXIS 9464, at *1; *Moore v. Ackerman Inv. Co.*, 2009 U.S. Dist. LEXIS 78725, at *2 (N.D. Iowa Sept. 1, 2009). "Among the factors a court may consider are the stage of the litigation, the amount of discovery exchanged, the experience of counsel, and the reasonableness of the settlement amount based on the probability of plaintiffs' success with respect to any potential recovery." *Fry*, 2014 U.S. Dist. LEXIS 9464, at *1.

Here, the Settlement meets these criteria. This case involves a bona fide dispute between the Parties regarding highly contested issues, such as the existence, quantity, and compensability of the alleged off-the-clock work. The Parties were able to resolve their disputes only after arms-length negotiations spanning several months, exchange of information, a full-day mediation

session with an experienced mediator, and post-mediation negotiations.

### 1. The Settlement Is Fair.

**Stage of the Litigation and Amount of Discovery Exchanged.** The Parties arrived at this settlement through extensive investigation, numerous conversations with FLSA Collective Members, and arms-length negotiations spanning several months. Before participating in mediation, the Parties also engaged in informal discovery, which included Defendant's production of its written timekeeping policies and practices and its personnel and payroll information for each of the FLSA Collective Members, exchanged survey and damage calculations, and shared their respective views on the strengths and weaknesses of Plaintiff's claims. (Brown Aff. ¶¶ 7). The Parties continued to engage in arm's length bargaining at the mediation that was presided over by an experienced and well-respected mediator, Frank Neuner, Esq. (Brown Aff. ¶¶ 8). The Parties continued to discuss settlement over the phone following the mediation, ultimately leading to an agreed-upon resolution.

The Settlement is a reflection of the Parties' reasoned compromise based on the information exchanged, relative strengths and weaknesses of the claims, as well as the litigation risks and unresolved questions of law.

**Experience of Counsel.** Both Parties were represented by experienced and competent counsel, well versed in wage and hour law, throughout the settlement negotiations and the pendency of the case. In negotiating the settlement, Plaintiff had the benefit of attorneys who are experienced in complex litigation and familiar with the legal and factual issues of the case. (Brown Aff. ¶¶ 26). In Plaintiff's Counsel's view, the settlement provides substantial benefits to the FLSA Collective Members, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

(Brown Aff. ¶¶ 28).  Counsel for both parties were able to assess the value of the respective claims and defenses and incorporate those values into the settlement.

**Fairness of distribution among FLSA Collective Members.**  The Settlement is fair in that FLSA Collective Members' benefits are determined by the actual number of weeks worked during the Relevant Time Periods in relation to all other FLSA Collective Members and the claimed uncompensated time allegedly spent booting up and logging into computers for each work shift.

**Fairness of the Service Award for the named Plaintiff.**  The principle of fairness is also met by the $6,500 service award to the named Plaintiff.  In deciding whether a service award is warranted, the courts consider "(1) [the] actions the plaintiff[] took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff[] expended in pursuing litigation." *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 867 (8th Cir. 2017).  Here, Plaintiff provided invaluable assistance to Plaintiff's Counsel in explaining Defendant's timekeeping policies and practices and in providing information to assist in the settlement negotiations.  (Brown Aff. ¶¶ 10).  Indeed, service awards up to $10,000 are common.  *Caligiuri*, 855 F. 3d at 867 (citing *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming $10,000 service awards to the named plaintiffs) and *Zillhaver v. UnitedHealth Group, Inc.* 646 F. Supp. 2d 1075, 1075, 1085 (D. Minn. 2009) (awarding $15,000 service to each of the named plaintiffs)).

Moreover, service awards are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004,1024 (E.D. Wis. 1984), for example, the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive

special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. Accordingly, the service award in this case should be preliminary judged as fair and reasonable.

### 2.    The Settlement Is Reasonable.

At $3,500,000 overall, the recovery under the proposed settlement is clearly substantial and approximates 3 minutes of off-the-clock time for each employee and for each work shift, doubled for liquidated damages. Of this amount, $2,272,333.20 will be made available to the 6,010 potential members of the FLSA Collective. The FLSA Collective Members' benefits are determined by a precise accounting of the weeks they worked during the Relevant Time Periods in relation to the total number of weeks worked by all FLSA Collective Members during those same time periods. These considerations indicate that the proposed settlement is reasonable, warranting approval.

The conclusion that the Settlement is reasonable is reinforced by considering such factors as the risk that the FLSA Collective might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings.

Furthermore, while Plaintiff's Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain and likely to consume years of time. (Brown Aff. ¶¶ 28). Having reviewed Defendant's policies and practices and the personnel and payroll records for the FLSA Collective Members, the Parties' counsel—all experienced litigators well versed in wage and hour law—arrived at a reasonable resolution through lengthy arm's-length negotiations, up to and including the drafting of the Settlement, the Class Notice and Claim's Form.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. A court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz*, 447 F .2d 431,433-34 (5th Cir. 1971); *Martin*, 2020 U.S. Dist. LEXIS 149626 at *4-5 (taking into account, in approving an FLSA collective settlement, "the complexity, expense, risk, and probable protracted duration of further litigation"). The policy favoring the settlement of class and other complex actions applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive, time-consuming and uncertain in light of the lack of clarity as to whether the activities at issue in this case are compensable. That this is a collective and class action further amplifies the economies of time, effort, and expense achieved by the settlement. Inevitably, the certification process alone would add significant time and expense to the litigation process. The settlement, on the other hand, provides to all FLSA Collective Members substantial relief, promptly and efficiently. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, *529 F.2d 943, 950 (*9th Cir. 1976) (footnote omitted); *see also Newberg* § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants approval and the issuance of notice of its terms to the FLSA Collective Members.

### C. The Proposed Fees are Fair and Reasonable.

Class Counsel is requesting this Court to award the amount of up to $1,176,666.67 for fees and costs. This figure represents approximately 33.3% of the Settlement Fund for fees, plus up to $10,000 to reimburse Plaintiff's Counsel for the costs incurred to date and any additional costs to be incurred in implementing the Settlement.

Under the FLSA and the MMWL, plaintiff is entitled to reasonable attorneys' fees spent in recovering unpaid wages. *See* 29 U.S.C. § 216(b); Mo.Rev.Stat. § 290.527. "Though the fee is mandatory, the Court has discretion to determine the amount and reasonableness of the fee….When a common fund is created by settlements, courts have applied one of two methods in determining reasonable attorney's fee awards: a percentage of the fund or the lodestar method." *Sanderson v. Unilever Supply Chain, Inc.*, 2011 WL 6369395, at * 1 (W.D. Mo. Dec. 19, 2011).

Here, Court should apply the percentage-of-the-fund method, as other courts in this Circuit have done when reviewing FLSA collective action settlements. *See Nicholson*, 2020 U.S. Dist. LEXIS 42134, at *7-8 (approving fees FLSA collective action settlement that amounted to one third of the settlement); *Blume v. Int'l Servs.*, 2014 U.S. Dist. LEXIS 121879, at *7 (E.D. Mo. Sep. 2, 2014) (same); *West v. PSS World Med., Inc.*, 2014 U.S. Dist. LEXIS 57150, at *2-3 (E.D. Mo. Apr. 24, 2014) (same).

The United States Supreme Court has long recognized the principle that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) *quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine is designed to prevent freeloading. *Id*. The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to "prevent the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *Boeing*, 444 U.S. at 478. The common fund doctrine permits an award of attorney's fees from a common fund when a plaintiff, on behalf of a class, successfully maintains an action that benefits the FLSA Collective Members in a manner that benefits himself. *Lett v. City of St. Louis,* 24 S.W.3d 157, 163 (Mo. App. E.D. 2000).

The Eighth Circuit has approved the percentage of recovery methodology to evaluate attorney's fees in common fund settlements. *Koenig v. US bank Nat'l Assoc.*, 276 F.3d 1008 (8th Cir. 2001); *Wiles v. Southwestern Bell Telephone Co.*, 2011 WL 2416291 (W.D. Mo. June 9, 2011). As courts have routinely recognized, this approach most closely aligns the interests of lawyers with the class, since the more recovered for the class, the more the attorneys stand to be paid. *Charter Communications, Inc. Sec. Litigation*, 2005 WL 4045741 *13 (June 30, 2005) (*quoting Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996)). This approach is also consistent with arrangements in the market place for contingency cases, where the individual client generally agrees to a fee based on amount recovered. *Id.*; *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

Courts in the Eighth Circuit have found that "in 'common fund' cases, where attorney fees and FLSA Collective Members' benefits are distributed from one fund, a percentage of the benefit method may be preferable to the lodestar method." *Sanderson v. Unilever Supply Chain, Inc.*, supra, (quoting *Wiles*, 2011 WL 2416291). As courts note, the percentage of the fund method is preferred because, among other things, it rewards prompt and efficient resolution of class litigation, while strict application of the alternative "lodestar" methodology encourages inefficiency and resistance to prompt settlement. *See Swedish Hospital Corp v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

In reviewing an award of fees based upon the percentage of the fund, courts consider the following factors in determining a fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

> reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Shackleford*, 2013 WD 937550 (*quoting Wiles, supra*, 2011 WL 2416291 *4)

Based upon the preference for the percentage of the benefit method, coupled with an analysis of the above factors, Class Counsel's fee request is fair and reasonable and should be approved by this Court.

**(1)     The Novelty and Difficult of the Questions Involved, the Requisite Skill and Experience, Reputation and Ability of the Attorneys**

Cases filed under the FLSA and MMWL require experienced lawyers to pursue the claims due to the numerous complexities of the cases. "FLSA claims typically involve complex mixed questions of fact and law – e.g., what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or 'postliminary' activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rules." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 743 (1981). A thorough understanding is required of the various exemptions that may be applied to the employees, as well as the numerous state and federal regulations that define and explain the exemptions. In addition, experienced attorneys are necessary in order to understand and analyze various employment practices and documents to determine if the employers' practices conform to the applicable law. In most cases, the actual practice is much different from a company's stated policy, and therefore, experienced attorneys are necessary in order to protect employees' rights in pursuing these cases.

In this matter, Class Counsel is experienced in this area of the law and has gained particularized skills necessary to effectively prosecute these actions. (Brown Aff. ¶¶ 1, 2, 27).

### (2)     Preclusion of Other Employment and Contingent Fee

Class Counsel's time and resources are limited and therefore, the decision to handle any case will necessarily preclude them from handling other cases. Class Counsel undertook this matter on a contingency basis, while incurring all expenses and costs in this matter, and assuming all risk in this matter. Time and money spent on this matter cannot be spent on other matters and as significant time was required in this matter, Class Counsel was precluded from using the time for other matters.

Moreover, since Class Counsel handled the case on a contingent fee, Class Counsel assumed all risk in this matter, including the risk of no recovery and the loss of time expended and costs and expenses paid. Due to the nature of FLSA litigation, attorneys handling these cases must be prepared to make significant investments of time and money with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. This type of risk is outside the scope of risk most attorneys and firms can and are willing to handle.

### (3)     The Customary Fee and Awards in Similar Cases

As previously stated, the customary fee in similar cases is based upon the percentage of recovery methodology and Class Counsels' request is in line with similar awards. As noted in *Shackleford*, a counsel fee of 33.3% of the common fund "is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action." *Shackleford, supra*, 2013 WD 937550 *2 (quoting *Burkholder v. City of Fort Wayne*, 750 F.Supp.2d 990 (N.D. Ind. 2010))

Class Counsel's fee request is well within the range of fees awarded by courts in this District and the Eighth Circuit. *Mahmood v. Grantham University, Inc.*, 4:10-CV-0621 DGK (W.D. Mo. June 4, 2012) (approving fee request of 33% in a FLSA action); *In re U.S. Bancorp*, 291 F.3d 1035, 1038 (8th Cir. 2002) (no abuse of discretion in awarding 36% of $3.5 million

recovery to class counsel); *KK Motors v. Brunswick Corp.*, No. 98-2307 (D. Minn. Mar. 6, 2000) (awarded one-third of the $30 million settlement fund); *In re Employee Ben. Plans Secs. Litig.*, 1993 WL 330595, at * 7 (D. Minn. June 2, 1993) (awarding 33.3% of the common fund); *Waters v. Kryger Glass Co.*, Case No: 09-1003-CV-W-SOW (W.D. Mo.) Doc 60 (approving attorneys' fees of 33%); *McKinzie v. Westlake Hardware, Inc.*, Case No.: 09-cv00796 FJG (W.D. Mo.) (approving attorneys' fees of 33%); *Hamilton, et al. v. ATX Services, Inc.*, Case No 10-0030 SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 34%); *Morak, et al. vi CitiMortgage, Inc.*, Case No.: 07-1535 (E.D. Mo. September 26, 2008) (order under seal approving attorneys' fees and expenses at 33%).

In addition, cases involving complex litigation or in the class action context, a one-third contingent fee award is not unreasonable. *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260 (Mo. App. E.D. 2011) *citing In re Rite Aid Corp. Secs. Litig.*, 146 F.Supp.2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from under $1 million to $50 million, the average attorney's fee percentage is 31.71%, and the median is 33.3%).

Courts have also stated that the percentage awarded should not be computed on a "sliding scale," i.e. decreasing the percentage as the recovery increases. As noted by courts:

> This position [that the percentage of recovery devoted to attorneys fees should decrease as the size of the overall settlement or recovery increases]…has been criticized by respected courts and commentators, who contend that such a fee    scale often gives counsel an incentive to settle cases too early and too cheaply.

*In re Charter Communications Sec. Lit.*, 2005 WL 4045741 (E.D. Mo. June 30, 2005).

Based upon established case law, and counsel's prior experiences, the amount sought by Class Counsel is fair and reasonable.

**(4)    Time Limitations and Nature and Length of the Professional Relationship**

Cases under the FLSA involve unique time limitations that require the attorneys to aggressively pursue employees' claims. Specifically, the statute of limitations in FLSA claims is three (3) years; however, the statute of limitations does not toll for putative FLSA Collective Members when a case is filed, but rather, continues to run until each employee files his or her consent to join the case. *See* 29 U.S.C. § 256.

Due in part to Class Counsel's experience, upon researching the viability of Plaintiff's claims, Class Counsel moved quickly to file suit in December 2019. In addition, in order to protect the claims of the putative Class, Class Counsel took certain steps which allowed for an agreement to toll the applicable statute of limitations for the putative FLSA Collective Members.

**(5)    Results Obtained**

Plaintiff's Counsel assisted the Plaintiffs in reaching an extremely favorable settlement for all putative FLSA Collective Members. Courts hold that a favorable result for the plaintiff is a "crucial factor" to consider when awarding attorney's fees. *See Wamsley v. Kemp Creditors Interchange Receivables Management, LLC*, 2010 WL 1610734, at *2 (S.D. Ohio April 20, 2010).

According to the terms of the Settlement, and verified through the Plaintiffs' examination of payroll records, time records, and the development of a damages matrix that applies to each FLSA Collective member, Defendant will pay a total of up to $3,500,000 overall, which represents approximately 3 minutes of off-the-clock time for each employee and for each work shift, doubled for liquidated damages. Of this amount, $2,272,333.20 will be made available to the 6,010 potential members of the FLSA Collective. This recovery is clearly a substantial and favorable result for the FLSA Collective.

In analyzing an award of fees, courts also consider and look favorably upon the efforts of counsel in achieving a substantial recovery without burdening the judicial system. *Cohn v. Nelson*, 375 F.Supp.2d 844, 865 (E.D.Mo. 2005). In *Cohn v. Nelson*, the Court held that plaintiffs' counsel should be rewarded in light of the benefit they created and their ability to resolve the litigation in an efficient manner, thereby conserving judicial resources, as well as the fact that the amount of the fee was negotiated at arm's length between plaintiffs' counsel and defendants' counsel. *Id*. 862-863.

In the matter before this Court, there is no question Class Counsel successfully achieved a substantial recovery for the benefit of all FLSA Collective Members who received or will be receiving a payment consisting of overtime owed, in addition to a payment for liquidated damages, at virtually no cost or time expended by the FLSA Collective Members. Furthermore, by reaching a Settlement in this matter, Class Counsel was able to obtain a benefit for the FLSA Collective Members without burdening the judicial system in which each and every FLSA Collective Member could have potentially filed a separate action for wages and applicable damages.

**(6)      Time and Labor Required**

In common fund cases, courts typically put more weight on the "results obtained" factor and less weight to the "time required" factor. Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1104 (D.N.M. 1999) ("[I]n the contingency fee context the marketplace would value the services by the results obtained, not by the hours required to achieve them. Therefore, the lodestar analysis…either as the primary means of setting the award or as a check on the reasonableness of a proposed percentage would not provide an accurate gauge by which to judge the award.").

Here Class Counsel has invested a substantial amount of time and resources in this action, approximately 692.5 hours to date, and took a significant risk of failing to recover due to certain legal obstacles in this case. Class Counsel worked numerous hours towards the prosecution of this case, including an analysis of the payroll and time records to determine the damages, as well as towards the fairness of the Settlement and negotiation and documentation of the Settlement's terms, without any assurance of receiving any fees or expenses.

**(7) Reaction of the Class**

Some Courts also consider the reaction of the FLSA Collective Members to the fee and expense request. *Cohn v. Nelson, supra.* Plaintiff's Counsel has spoken with Plaintiff and six other FLSA Collective Members regarding the settlement, who have reacted positively. To date there have been no complaints from Plaintiff or other FLSA Collective Members regarding the requested fees and expenses. Accordingly, the attorneys' fees sought in this case should be judged as fair and reasonable.

**D.     The Notice Adequately Informs FLSA Collective Members Of The Settlement.**

The Notice to the FLSA Collective explains to FLSA Collective Members, in simple, clear, and easily understood language, the terms of the Settlement, including the financial benefit each may receive and the scope of the release he or she will provide in exchange for that benefit; the method by which each may participate in the Settlement and the steps each may take if they want to obtain additional information about the litigation and/or the Settlement. The 45-day period between the time the Notice is sent and the time FLSA Collective Members must submit the Claim Form provides FLSA Collective Members with an ample amount of time to consider the Settlement and seek answers to any questions each may have before deciding on a course of action with respect to the Settlement. Accordingly, in addition to approving the Settlement, the

Parties ask the Court to approve the issuance and the sending of the Notice, including the Claim Form attached to the Notice, to FLSA Collective Members in substantially the form they are set forth in the Settlement.

## IV.     CONCLUSION

Based on the information and reasons provided above, the Parties respectfully request the Court enter the Proposed Order granting approval of the collective action settlement filed in connection with this motion.

DATED:          October 22, 2020

Respectfully submitted,


*/s/ Jason T Brown*                                    */s/ Andrew D. Kinghorn*
Jason T. Brown                                        Andrew D. Kinghorn, #66006MO
Nicholas R. Conlon                                    JACKSON LEWIS P.C.
Lotus Cannon                                          222 S. Central Avenue, Suite 900
BROWN, LLC                                            St. Louis, MO 63105
111 Town Square Pl Suite 400                          (314) 827-3939 (Phone)
Jersey City, NJ 07310                                 (314) 827-3940 (Fax)
Telephone:  (877) 561-0000                            andrew.kinghorn@jacksonlewis.com
Facsimile:  (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com

Anthony M. Pezzani, #52900MO                          Eric R. Magnus
Engelmeyer & Pezzani, LLC                             171 17th Street, NW, Suite 1200
13321 N. Outer Forty Road, Suite 300                  Atlanta, GA 30363
Chesterfield, MO 63017                                404-525-8200 (Phone)
(636) 532-9933                                        404-525-1173 (Fax)
(314) 863-7793                                        eric.magnus@jacksonlewis.com
tony@epfirm.com

*COUNSEL FOR PLAINTIFF*                                *COUNSEL FOR DEFENDANT*
*AND THE FLSA COLLECTIVE*